UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE NONPARTY SUBPOENAS DUCES TECUM<br><br>CAHN & SAMUELS, LLP, and MAURICE U. CAHN,<br><br>Petitioners,<br><br>v.<br><br>THE TOPPS COMPANY, INC.,<br><br>Respondent. | Case No. 1:18-mc-00094 (TNM) |

## MEMORANDUM ORDER

Before the Court is a Motion to Quash Subpoenas Duces Tecum and/or For a Protective Order, ECF No. 1, filed by law firm Petitioners Cahn & Samuels, LLP, and Maurice U. Cahn, Esq. Since several of the core issues raised in this case are already pending in the underlying suit, and for other reasons explained below, the Court finds that exceptional circumstances warrant transferring this matter to the court that issued the subpoenas, the Southern District of New York.

**I.**

In the underlying lawsuit, the Topps Company claims that Koko's Confectionary and Novelty has committed intellectual property violations relating to a popular Topps' candy product, the Juicy Drop Pop. Mot. Quash 1; Opp. 2. Topps is also suing an individual named Paul Lapeyrouse on related allegations, in the Eastern District of Louisiana. Unsatisfied with Koko's discovery productions, Topps served subpoenas on the intellectual property lawyers who represented Koko's and Mr. Lapeyrouse, although not in New York litigation: Mr. Cahn and his

1

firm, Cahn & Samuels. ECF Nos. 1-2, 1-3 (subpoenas *duces tecum*); Opp. Mot. Quash 8. The Petitioners filed the instant Motion to Quash. In addition to briefing that motion, the parties have each filed motions to strike portions of the others' briefing. Petitioners' Motion to Disregard and/or Strike Declaration of Jean-Paul Ciardullo, ECF No. 4; Respondent's Motion to Strike (1) Petitioner's New Arguments on Reply, and (2) Koko's Improper Submission at Dkt. 5, ECF No. 7. All motions are now fully briefed.

The Petitioners do not consent to transfer, Notice, ECF No. 15, and a court may transfer subpoena-related motions to the court of issuance only "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The Advisory Committee Note explains how courts should interpret "exceptional circumstances":

> In the absence of consent, the court may transfer in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Fed. R. Civ. P. 45(f) advisory committee's note (2013 amendments). Factors to consider "include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34 (D.D.C. 2014) (citations omitted).

**II.**

Here, exceptional circumstances exist for two reasons. First, the Respondents only seek this information from the Petitioners because they are concerned that they cannot get it from Koko's. Opp. Mot. Quash 8. The propriety of these third-party subpoenas necessarily turns on what Topps can obtain from Koko's, and *that* issue is already before the originating court. Second, even the issue of attorney-client privilege raised in the Petitioners' Motion to Quash rests on factual and legal developments that the underlying court will be in a better position to manage.

Topps has already filed, and fully briefed, a Motion to Compel production from Koko's in the underlying suit. ECF Nos. 110, 116-17, and 125 in S.D.N.Y. Case No. 16-cv-05954. In support of the Motion to Quash here, the Petitioners core contentions are that the subpoenas are (1) overly burdensome, since "Topps already has or could have sought most, if not all of, the requested information from [Koko's]," Mot. Quash 11, and (2) inappropriate, since they seek information subject to attorney client privilege. *Id.* at 14-15. Topps answers that "Koko's has withheld documents," Opp. 4, making "non-party subpoena practice a necessary tool." *Id.* at 5. The two motions—this Motion to Quash, and Topps' Motion to Compel—put largely the same information at issue.

In the underlying case, Topps claims that Koko's should produce the following materials, as summarized in Topps' Motion to Compel:

> (1) a complete set of purchase orders and related correspondence with prospective distributors and purchasers of the accused products, (2) a complete set of physical samples of the accused products, as Koko's already previously provided to the [Southern District of New York] Court, and (3) communications with Paul Lapeyrouse and his businesses, *i.e.*, the developer, manufacturer, and supplier of the accused products.

Mem. Of Law in Support of Mot. Compel 1 (Mot. Compel), ECF No. 110-1 in S.D.N.Y. Case No. 16-cv-05954. Here, the subpoenas as narrowed ask the Petitioners to produce:

> (1) All communications and agreements to which both Lapeyrouse and Koko's are a party that refer or pertain to any or all of (a) the Squeezy Squirt product or prototypes thereof, (b) Topps, (c) the Juicy Drop product, (d) the '316 Patent, (e) the present lawsuit, (f) any efforts to redesign Squeezy Squirt or introduce a new product in response to Topps' allegations in this lawsuit, and (g) patent or trade dress applications relating to candy products that either dispense liquid candy, or that that [sic] contain two or more different kinds of candy (e.g., solid and liquid, solid and granular, etc.).
>
> (2) Documents sufficient to identify all patent or trade dress applications (both U.S. and international) filed or owned by Lapeyrouse or Koko's relating to candy products that either dispense liquid candy, or that contain two or more different kinds of candy (e.g., solid and liquid, solid and granular, etc.). [*NOTE: A simple listing of applications will suffice if that is easier. This will allow us to confirm we have a complete list, particularly as to any that may not have become public, or that were filed under a different name.*]
>
> (3) All non-public correspondence with patent or trademark offices (both U.S. and international) concerning patent or trade dress applications filed or owned by Lapeyrouse or Koko's relating to candy products that either dispense liquid candy, or that that contain two or more different kinds of candy (e.g., solid and liquid, solid and granular, etc.).
>
> (4) All communications concerning validity, invalidity, infringement, or non-infringement of Topps' asserted intellectual property rights in the present lawsuit, as well as all communications concerning any defenses to Topps' claims in the present lawsuit, to the extent Koko's will be relying on any advice of counsel defense. [*NOTE: As discussed, a response to this request would only come due if Koko's elects to rely on advice of counsel. We can discuss it again at such time, if that happens.*]

Opp. 10-11 (bracketed text in original).

A close comparison is telling. Three of the four categories of documents that Topps wants from the Petitioners correspond to unanswered questions in the underlying case. Category

#1—relevant communications between Lapeyrouse and Koko's—corresponds to the third category of underlying requests: Koko's "communications with Paul Lapeyrouse and his businesses." *Compare* Opp. 10 *with* Mot. Compel 1.  Category #2—documents identifying patent or trade dress applications—correspond to the second category of underlying requests: the "complete set of physical samples" showing how the relevant products appear.  *Compare* Opp. 11 *with* Mot. Compel 1.  Category #3—"non-public correspondence with patent or trademark offices"—does not squarely correspond to a request in the underlying suit but may correspond if communications between Koko's and Mr. Lapeyrouse and his entities sweep them up.  *Compare* Opp. 11 *with* Mot. Compel 3 (requesting "All documents concerning communications between Koko's and any of the Lapeyrouse Entities").  And Category #4—communications regarding intellectual property issues at the heart of the underlying suit, and likely examples of attorney-client privileged documents—only comes into play if Koko's chooses to "rely[] on any advice of counsel defense." Opp. 11.

It would make no sense to decide this Motion to Quash until the U.S. District Court for the Southern District of New York issued a decision on the underlying Motion to Compel, given the close factual relationship between the two motions.  And after it decides that motion, that court will be far better positioned to determine if the subpoenas facing the Petitioners are unduly burdensome, or even moot.  Even the resolution of attorney-client privilege issues partially turns on an event in the underlying case: whether Koko's invokes an advice of counsel defense.  A transfer will "avoid disrupting the issuing court's management of the underlying litigation," and enable resolution of fundamental issues underlying this matter (and potentially arising in the related Louisiana case as well).  *See* Fed. R. Civ. P. 45(f) advisory committee's note (2013 amendments).

The Court does not take lightly any inconvenience that the Petitioners—a local firm—may theoretically face when litigating in New York. But these motions are already fully briefed, making the burden light, and the Southern District of New York is in a far better position to decide the matter. Courts routinely transfer subpoena-related motions—even over objection—due to the complexity of the underlying case, *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, 309 F.R.D. 41, 44 (D.D.C. 2015), or because the issuing court is grappling with related issues. *Judicial Watch*, 307 F.R.D. at 35. "Where exceptional circumstances exist, a court may transfer such a subpoena-related motion *sua sponte*." *Victim Servs., Inc. v. Consumer Fin. Prot. Bureau*, 298 F. Supp. 3d 26, 28 (D.D.C. 2018). The Court finds that the exceptional circumstances counseling transfer outweigh the Petitioner's interests "in obtaining local resolution of the motion." *Id*.

### III.

For these reasons, the Court finds that "exceptional circumstances" exist, warranting a transfer. It is hereby **ORDERED** that the Clerk of Court shall transfer this matter to the United States District Court for the Southern District of New York, where *The Topps Company, Inc. v. Koko's Confectionary & Novelty, Inc.*, Case No. 1:16-cv-05954-GBD-KNF is pending. It is **FURTHER ORDERED** that the Clerk of Court close this miscellaneous case.

    SO ORDERED.

Dated: September 18, 2018                                      TREVOR N. MCFADDEN, U.S.D.J.